**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| R&M TRUCKING-INTERMODAL, INC., | ) | |
| | ) | Case No. 16-cv-8802 |
| Plaintiff, | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| v. | ) | |
| | ) | |
| DR. MIRACLE'S, INC., DRM HOLDINGS, INC., | ) | |
| DRM HOLDINGS d/b/a DRM/JPC BRANDS, | ) | |
| and RICHARD LOMBARDI, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff R&M Trucking-Intermodal, Inc. brings this action alleging breach of contract and related claims against Defendants Dr. Miracle's, Inc., DRM Holdings, Inc., DRM Holdings d/b/a DRM/JPC Brands, (collectively, "DRM"), and Richard Lombardi. Currently before the Court are Defendant Lombardi's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [29], and Defendant DRM's Rule 12(b)(6) motion to dismiss [37]. For the reasons set forth below, Defendant Lombardi's motion to dismiss [29] is granted in part and denied in part, and Defendant DRM's motion to dismiss [37] is granted in part and denied in part: Plaintiff's breach of contract claim against Defendant DRM for breach of the Settlement Agreement (Count I can proceed; the common law fraud claim against Defendant Lombardi (Count II) can proceed; the promissory estoppel claim (Count III) can proceed against Defendant DRM and is dismissed as to Defendant Lombardi; the Illinois Consumer Fraud and Deceptive Business Practices Act claim (Count IV) is dismissed as to both Defendants; and the quantum meruit claim against Defendant DRM (Count V) is dismissed. Plaintiff is given until August 18, 2017 to file a second amended complaint consistent with this opinion, if it believes in good faith that it

can overcome the deficiencies identified below. This case is set for further status hearing on August 23, 2017 at 9:00 a.m.

## I.    Background

The following facts are drawn from Plaintiff R&M Trucking-Intermodal's First Amended Complaint [6] and the attached exhibits. Plaintiff is a full-service trucking company offering transportation and warehousing services in the Chicago area. [6, at ¶ 16.] Defendant DRM is a producer and distributor of hair care products. Defendant Lombardi is the Chief Financial Officer of DRM and was at all relevant times the personal contact for all communication between Plaintiff and DRM. [*Id.* at ¶ 1.]

Plaintiff contends that in 2012 and 2013, Plaintiff performed transportation and warehousing services for Defendant DRM, including shipping and storage services for a large amount of inventory. [*Id.* at ¶ 2.] According to Plaintiff, the inventory consisted of 773 pallets of chemical-based hair relaxer kits (equivalent to 20 full-size trailer loads), which Defendant DRM stored in Plaintiff's warehouse for a weekly storage fee. [*Id.* ¶¶ 2, 21.] Plaintiff alleges that beginning in March 2013, Defendant DRM agreed to pay Plaintiff a storage fee of approximately $2,512.25 per week to store the inventory until Defendant DRM was able to find an alternative storage facility. [*Id.* at ¶ 22.] Plaintiff contends that Defendant DRM incurred significant monthly invoices for Plaintiff's transportation and warehouse services and refused to pay these invoices to Plaintiff. [*Id.* at ¶ 3.] Plaintiff further contends that Defendant refused Plaintiff's repeated requests to remove the inventory it had stored at Plaintiff's warehouse, which prevented Plaintiff from using the space for other paying customers. [*Id.*]

Specifically, Plaintiff alleges that in April 2013, Defendant Lombardi asked Plaintiff to perform additional transportation and storage services for Defendant DRM. Plaintiff asserts that

it informed Defendant Lombardi via email that DRM owed Plaintiff an outstanding balance of $429,505.73 to date for past transportation and storage services, and that at least one half of that outstanding balance would need to be paid before Plaintiff would perform additional services for DRM. [*Id.* at ¶¶ 24–25.] Defendant Lombardi emailed Plaintiff on April 3, 2013 and stated that DRM would pay Plaintiff $165,858 that day and would make another payment of $60,981.09 five days later, and requested that Plaintiff prepare the items for shipping. [*Id.* at ¶ 26; *id.*, at Exhibit A.] Plaintiff states in its First Amended Complaint that it relied on Defendant Lombardi's assurance that the payments would be made and agreed to perform the additional services for DRM. [*Id.* at ¶ 27.] However, Plaintiff contends that Defendant DRM did not make the payments as promised and instead made "sporadic payments in much smaller amounts" over the course of several months. [*Id.* at ¶ 28.]

Plaintiff asserts that on June 14, 2013, it again demanded that Defendant Lombardi make an immediate payment on the invoices that were over 30 days old, which amounted to approximately $108,000.[1] [*Id.* at ¶ 29.] Plaintiff contends that on August 24, 2014, it emailed Defendant Lombardi and again requested payment on the past due invoices and further requested that Defendant Lombardi remove the inventory from Plaintiff's warehouse given that Plaintiff was not being paid the agreed upon monthly storage fee. [*Id.* at ¶ 30.] Plaintiff contends that it could no longer afford to store the inventory without payment for the services and that it "had a growing customer base and needed room to store containers for its other customers." [*Id.* at ¶ 31.] On August 24, 2014, Defendant Lombardi assured Plaintiff via email that he would "clear up the bills by the end of the week." [*Id.* at ¶ 32; *id.* at Exhibit B.]

---

[1] The Court notes that Plaintiff seems to use Defendant DRM and Defendant Lombardi interchangeably in its allegations and occasionally just refers to "Defendant" without specifying which Defendant it is referring to. [See, *e.g.*, 6, at ¶¶ 23, 33, 41.] The Court will recount the allegations as alleged by Plaintiff, but presumes that Plaintiff's allegations refer to Defendant Lombardi as an agent for Defendant DRM.

According to Plaintiff, by February 2014, Defendant DRM still had not removed the inventory from Plaintiff's warehouse and "continued to dismiss all efforts by [Plaintiff] to collect the storage fees due and owing to [Plaintiff]."  [*Id.* at ¶ 33.]  On February 3, 2014, Plaintiff allegedly emailed Defendant Lombardi and demanded that the inventory be removed from the warehouse and that the overdue balance of $84,818.38 be paid immediately.  Defendant Lombardi responded that he would "look into it."  [*Id.* at ¶¶ 34–35.]  Plaintiff emailed Defendant Lombardi again on February 11, 2014 to request an update.  On February 25, 2014, Defendant Lombardi informed Plaintiff that he would write a check for $55,000 that week.  [*Id.* at ¶¶ 36–37; *id.*, at Exhibit C.]  Plaintiff alleges that on March 3, 2014, it informed Defendant Lombardi that the promised check never arrived.  On March 27, 2014, Plaintiff informed Defendant Lombardi that Defendant DRM owed Plaintiff over $160,000 and again demanded that payment be made and that the inventory be removed to make room for Plaintiff's paying customers, or Plaintiff would take legal action.  [*Id.* at ¶¶ 38–39; *id.*, at Exhibit D.]

In an email dated April 7, 2014, Defendant Lombardi emailed Plaintiff proposing to settle the entire matter by having Defendant DRM pay Plaintiff a discounted amount and remove the inventory by the end of June, with Defendant DRM responsible for all moving charges.  [*Id.* at ¶ 40.]  The email states:

> Here is what I propose:
>     1) Last statement I saw was at the end of January for a balance of 84k
>     2) I would like to discount the balance by 20% - since the charges were monthly for storage only
>     3) Beginning next week I will pay you 12.5 per week for 9 weeks—which would be 112.5 in total—that approximate discounted amount I would owe thru [sic] June [ ] would be paid by week of June 9.
>     4) Then by June 15th we would devise a plan and move all product out by end of June—will pay all moving charges at the agreed rate.
> Please review and think about this offer.  This is the best I can do at this time.

[*Id.*, at Exhibit E.] Plaintiff alleges that it accepted the terms of the offer, thus creating an enforceable contract ("the Settlement Agreement"). [See *id.* at ¶ 40.]

Plaintiff alleges that as of May 2014, Defendant had not made any payments in accordance with the Settlement Agreement. Plaintiff states that on May 5, 2014, it inquired as to why it had not received any payments, and Defendant Lombardi informed Plaintiff that he would send a "catch-up check" that week. [*Id.* at ¶¶ 41–42.] Plaintiff asserts that on September 4, 2014, it again emailed Defendant Lombardi to further inquire as to why no payments had been made and why the inventory had not been removed in accordance with the terms of the Settlement Agreement. [*Id.* at ¶ 43.] On September 8, 2014, the parties held a telephone conference and agreed that Defendant would make an immediate payment of $25,000 and would pay the remainder of the $162,698.13 outstanding balance at a later date. [*Id.* at ¶ 44; *id.*, at Exhibit G.]

Plaintiff brought suit on September 9, 2016 and filed his First Amended Complaint [6] on October 26, 2016. Plaintiff contends that as of the date of the filing of the lawsuit, no payments had been made by Defendant DRM in accordance with the terms of the Settlement Agreement and that Defendant DRM still had not removed the inventory from Plaintiff's warehouse, and thus monthly storage fees continued to accrue. [*Id.* at ¶ 45.] Plaintiff asserts that as of the date of the filing of the lawsuit, Defendant DRM owed Plaintiff in excess of $450,000 in accrued storage fees plus the costs of removal of the abandoned inventory. [*Id.* at ¶ 46.] Plaintiff brings a breach of contract claim against DRM for breach of the Settlement Agreement (Count I), a common law fraud claim against Lombardi (Count II), a promissory estoppel claim against DRM and Lombardi (Count III), an Illinois Consumer Fraud and Deceptive Business Practices Act claim against DRM and Lombardi (Count IV), and a quantum meruit claim against DRM (Count

5

V), which is pled in the alternative.[2]  Lombardi filed a 12(b)(6) motion to dismiss [29] on December 20, 2016, and DRM filed a 12(b)(6) motion to dismiss on January 13, 2017 [37], which are currently before the Court.

## II.    Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original).  Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level."  *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558.  In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor.  *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

---

[2] Plaintiff also brought an unjust enrichment claim against former defendants Wells Fargo Bank and FLFC Lending Co. (Count VI), but both Wells Fargo Bank and FLFC Lending Co. have since been voluntarily dismissed from the case.  [See 9, 21.]

### III.     Analysis

#### A.     Lombardi's Motion to Dismiss

Defendant Lombardi argues that all counts against him (Counts II, III, and IV) should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court will address each count in turn.

#### 1.     Count II: Common Law Fraud

In Count II, Plaintiff brings a claim of common law fraud, alleging that Defendant Lombardi, as an authorized agent of Defendant DRM, "knowingly and falsely reported to Jerome May, President of [Plaintiff], the following statements regarding the outstanding balance and the [i]nventory" that was to be removed from Plaintiff's warehouse:

> a.  On April 2, 2013 Lombardi told [ ] May in an email that Lombardi would pay $165,858 and would make another payment of $60,981.90 five days later in exchange for Plaintiff taking the time and effort to prepare the product for immediate shipping.
> b.  On August 24, 2013, Lombardi reported to Plaintiff that he would "clear up all bills by the end of the week."
> c.  On February 25, 2014, Lombardi against reported to Plaintiff[,] "you will be getting a check for just over 55k this week."
> d.  On April 7, 2014, Lombardi reported to Plaintiff that "beginning next week I will pay you 12.5 per week for 9 weeks —which would be 112.5 in total—that approximate discounted amount I would owe thru [sic] June [ ] would be paid by week of June 9."
> e.  On April 7, 2014, Lombardi reported to Plaintiff "by June 15th we would devise a plan and move all product out by end of June—will pay all moving charges at the agreed rate."
> f.  On September 4, 2015, Lombardi reported to Plaintiff that he "wanted to rectify this situation amicably and that he wanted to setup a deal whereby he would sell the Inventory to a liquidator and he wanted to "structure a deal with some liquidators whereby the payment for the merchandise * * * would go directly to you * * *"

[6, at ¶ 64.]

Plaintiff alleges that these misrepresentations were all knowingly false and designed to induce Plaintiff into continuing to store Defendant DRM's inventory and holding off on taking

legal action to collect the past due amounts and to remove the inventory.  [*Id.* at ¶ 65.]  Plaintiff further alleges that it relied on the misrepresentations and did not seek to have the inventory removed by a third party, which would have allowed Plaintiff to lease the warehouse space to another customer.  [*Id.* at ¶¶ 66, 68.]

Under Illinois law, the elements of common law fraud or fraudulent misrepresentation are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance on the statement; and (5) plaintiff's damages resulting from reliance on the statement.  *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012); *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 496 (1996).  Count II presents a claim of promissory fraud—that is, a "false statement of intent regarding future conduct," as opposed to a false statement of existing or past fact. *Martinez-Cruz v. N. Cent. Coll.*, 2013 WL 6498761, at *4 (N.D. Ill. Dec. 11, 2013) (quoting *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 853 (7th Cir. 2007)) (internal quotation marks omitted).  Promissory fraud is "generally not actionable in Illinois unless the plaintiff also proves that the act was part of a scheme to defraud."  *Wigod*, 673 F.3d at 570 (citation and internal quotation marks omitted).  However, the Seventh Circuit has noted that this "scheme to defraud" exception is so broad that it "tends to engulf and devour the rule" against promissory fraud claims.  *Id.* (quoting *Stamatakis Indus. Inc. v. King*, 520 N.E.2d 770, 772 (Ill. App. Ct. 1987)) (internal quotation marks omitted).

"In order to survive the pleading stage, a claimant must be able to point to a specific, objective manifestation of fraudulent intent—a scheme or device."  *Bower v. Jones*, 978 F.2d 1004, 1004 (7th Cir. 1992).  In other words, the plaintiff must allege that at the time the promise was made, the defendant did not intend to fulfill it.  *Wigod*, 673 F.3d at 570.  Illinois law requires

8

a pattern of fraudulent statements or one particularly egregious fraudulent statement in order to bring a claim under the "scheme to defraud" exception. *BPI Energy Holdings, Inc. v. IEC (Montogomery), LLC*, 664 F.3d 131, 136 (7th Cir. 2011); see also *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999) ("By requiring that the plaintiff show a pattern, by thus not letting him rest on proving a single promise, the law reduces the likelihood of a spurious suit; for a series of unfulfilled promises is better (though of course not conclusive) evidence of fraud than a single unfulfilled promise.").

Defendant Lombardi argues that Count II fails to state a claim for fraud because Plaintiff failed to allege any "specific manifestations of fraudulent intent." *Bower*, 978 F.2d at 1012. In Defendant Lombardi's view, Plaintiff has not alleged any facts supporting an allegation that Lombardi made these statements intending that Defendant DRM would not fulfill the promises. See *Indus. Specialty Chemicals, Inc. v. Cummins Engine Co., Inc.*, 902 F.Supp. 805, 813 (N.D. Ill. 1995) ("[A] claim of fraud for an alleged misrepresentation of future conduct cannot be grounded solely on the broken promise itself.").

The Court is not convinced. Plaintiff alleges that Defendant Lombardi made at least six fraudulent representations over the course of twenty-nine months, from April 2, 2013 through September 4, 2015, and that these misrepresentations were intended to induce Plaintiff to continue to store Defendant DRM's inventory in Plaintiff's warehouse. [See 6, at ¶ 64–65]. This is enough to allege a pattern of fraudulent statements. The Seventh Circuit has noted that "Illinois courts have found as few as two broken promises enough to establish a scheme to defraud." *Wigod*, 673 F.3d at 570 (collecting cases). Further, in cases where the plaintiff is able to allege a "specific pattern of misrepresentations, including the person who made the misrepresentations and the time and place at which he did so, courts will allow promissory fraud

claims to survive a motion to dismiss." *Maurice Sporting Goods, Inc. v. BB Holdings, Inc.*, 2017 WL 2692124, at *5 (N.D. Ill. June 22, 2017). Here, Plaintiff alleges the dates of specific emails and allegedly false statements by Defendant Lombardi. See *Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, 2005 WL 843297, at *13 (N.D. Ill. Jan. 20, 2005), aff'd, 541 F.3d 719 (7th Cir. 2008) (concluding that plaintiff had sufficiently alleged promissory fraud where plaintiff alleged that defendant used multiple misrepresentations and plaintiff had adequately pled facts setting forth the identity of the person who made the misrepresentations, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff).

Additionally, Plaintiff alleges that on September 4, 2015, Defendant Lombardi represented to Plaintiff that he wanted to sell the inventory to a liquidator and have the payments "go directly to [Plaintiff]." [6, at ¶ 64(f).] However, Plaintiff alleges that it later discovered that the inventory consists of chemical-based hair relaxers that are long past their expiration date and "are believed to contain dangerous and hazardous ingredients including sodium hydroxide and calcium hydroxide." [*Id.* at ¶ 4.] The allegation that the inventory was expired and thus worth very little, if anything, supports the inference that Defendant Lombardi did not intend to keep his September 4, 2015 promise when he made it. Similarly, Plaintiff alleges that he later discovered that the inventory served as collateral for various loans of Defendant DRM, [*id.* at ¶ 47], so even if the inventory was sellable, the proceeds likely would go to a secured lender and not to Plaintiff. This further support the inference that Defendant Lombardi did not intend to fulfill his promises at the time they were made. See *Wigod*, 673 F.3d at 570 (plaintiff must allege that at the time the promise was made, the defendant did not intend to fulfill it).

In sum, the Court concludes that Plaintiff has sufficiently alleged a scheme to defraud to survive a motion to dismiss. See *Maurice Sporting Goods, Inc.*, 2017 WL 2692124, at \*5 (denying motion to dismiss where counter-plaintiff alleged that counter-defendant made false promises to induce counter-plaintiff to continue its business relationship with counter-defendant); *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 683 (Ill. 1989) (concluding that plaintiff stated claim for fraudulent misrepresentation where defendants allegedly made numerous false promises regarding their ability and intent to pay debts "in order to induce [the plaintiff] to continue provision of [ ] goods and services"); cf. *Jada Toys, Inc. v. Chicago Imp., Inc.*, 2008 WL 1722140, at \*2 (N.D. Ill. Apr. 10, 2008) (granting motion to dismiss fraud claim where there were no allegations that defendant repeatedly made false promises to induce plaintiff to continue to purchase from defendant, but rather plaintiff alleged only one fraudulent proposal from defendant).

Next, Defendant Lombardi argues that Count II should be dismissed because Plaintiff has failed to allege that it has been damaged by any alleged reliance on Defendant Lombardi's alleged misrepresentations. [30, at 79.] According to Defendant Lombardi, any damage suffered by Plaintiff is solely attributable to Defendant DRM's failure to pay storage charges and its failure to remove the inventory from the warehouse. Defendant Lombardi relies on *Forsythe v. Black Hills Corp.*, in which the court granted the defendants' 12(b)(6) motion to dismiss the plaintiffs' fraud claim because the plaintiffs had not adequately alleged any injury as a result of the purported fraud. 2007 WL 805217, at \*3–\*4 (N.D. Ill. Mar. 12, 2007). The court explained that any injury suffered by plaintiff was a result of the defendants' underlying conduct, and not a result of their misrepresentations as to their conduct. *Id.* at \*3.

Again, the Court is not convinced. *Forsythe* can be distinguished from the case at hand. In *Forsythe*, the court emphasized the fact that the plaintiffs had not alleged that as a result of defendants' misrepresentations, they had changed their position in any way that resulted in harm. 2007 WL 805217, at *3. The court explained that "[t]he only thing that comes anywhere within shouting distance of such an allegation" was plaintiffs' allegation that defendants "took steps to preclude the plaintiffs from being earlier aware of the [underlying] fraud[ulent conduct]." *Id.* The court explained that this allegation was insufficient to sustain a fraud claim because the plaintiffs had not alleged that they were harmed by this delay. *Id.* ("Plaintiffs have not alleged in their amended complaint that there was anything they did not do but would have done, that they did but would not have done, or that they would have done differently, had they known the truth.").

Here, by contrast, Plaintiff does allege that it changed its position based on Defendant Lombardi's misrepresentations and that this resulted in harm to Plaintiff. Specifically, Plaintiff alleges that because of Defendant Lombardi's assurances that Defendant DRM would pay the amounts due and remove the inventory by a certain date, Plaintiff continued to store Defendant DRM's inventory and did not have the inventory removed, which would have allowed Plaintiff to lease the warehouse space to a paying customer. [6, at ¶¶ 66, 68; *id.*, at Exhibit D (Plaintiff emailing Defendant Lombardi indicating that Defendant DRM was behind on payments and that "[w]e also need some dialog going on * * * where to move your merchandise to.").] Plaintiff further alleges that as a result of Defendant Lombardi's alleged misrepresentations, it has been damaged in an amount in excess of $500,000. [*Id.* at ¶ 69]; see *Bucciarelli-Tieger v. Victory Records, Inc.*, 488 F. Supp. 2d 702, 711 (N.D. Ill. 2007) (dismissing fraud claim as "merely a breach of contract [claim] using the language of fraud" where plaintiffs did not allege "that they

were induced to take any action [ ] or refrain from taking any action (such as terminate a contract that they had the right to terminate) because of" the allegedly fraudulent statements).

As previously discussed, the Court must draw all reasonable inferences in favor of Plaintiff at this stage of the case. It is reasonable to infer from Plaintiff's allegations that if Defendant DRM had merely breached the alleged Settlement Agreement and if Defendant Lombardi had not made further assurances to Plaintiff, Plaintiff would have removed the inventory from the warehouse in order to bring in a paying customer. Additionally, it is reasonable to infer that Plaintiff would have been better off had it removed the inventory from the warehouse to make space for a paying customer, especially given considerations such as Plaintiff's cash flow and growing customer base. [See *id.*, at Exhibit G (Plaintiff emailing Defendant Lombardi and explaining that Plaintiff is not a large company and that Defendant DRM's past-due invoices have "a great impact on [Plaintiff's] cash flow."); *id.*, at ¶ 31 (Plaintiff alleging that it could no longer afford to store the inventory without payment for the services and that it "had a growing customer base and needed room to store containers for its other customers")]; see also *Forsythe*, 2007 WL 805217, at *3 (explaining that to sustain a fraud claim, the plaintiff must allege that "had it not been for the fraud, [the plaintiff] would have spared an injury and thus would be better off"); *Cole Energy Dev. Co. v. Ingersoll-Rand Co.*, 913 F.2d 1194, 1202 (7th Cir. 1990) (recognizing opportunity cost as a component of economic loss and stating that "[Plaintiff's] consequential damages would include the lost opportunity cost it incurred because the profits were delayed."). Thus, Plaintiff has adequately alleged that the fraud "resulted in an injury different from that resulting from the alleged breach of contract." *Dugdale, Inc. v. Alcatel-Lucent USA, Inc.*, 2011 WL 2261318, at *5 (N.D. Ill. June 7, 2011) (citation and internal quotation marks omitted). "At this stage of the case, of course, plaintiff[ ]

[is] not required to prove that [it] was damaged by [its] reliance on the alleged misrepresentations; rather, [it] need only allege it." *Forsythe*, 2007 WL 805217, at *3. The Court concludes that Plaintiff's allegations that it was damaged by its reliance on Defendant Lombardi's alleged misrepresentations are sufficient to survive a motion to dismiss.

### 2. Count III: Promissory Estoppel

In Count III, Plaintiff brings a promissory estoppel claim against Defendants Lombardi and DRM. Plaintiff argues that Defendant Lombardi promised to pay the agreed upon amount due to Plaintiff and to remove the inventory from the warehouse; Plaintiff relied on such promise and postponed legal action against Defendants and continued to store the inventory; and due to this reliance, Plaintiff lost the revenue it could have generated by leasing the space to a paying customer and is now forced to incur the costs of removing hazardous material from its warehouse. [6, at ¶¶ 73–87.]

Defendant Lombardi argues that Count III for promissory estoppel should be dismissed because under Illinois law, an agent of a disclosed principal is not liable for the principal's obligations. See *Gateway Erectors Division of Imoco–Gateway Corp. v. Lutheran General Hospital*, 430 N.E.2d 20 (Ill. App. Ct. 1981). Defendant Lombardi contends that he was acting as an agent for a disclosed principal (Defendant DRM), and thus cannot be liable for any failure of Defendant DRM to comply with its promises. See *Croft v. Inlight Risk Mgmt., Inc.*, 2002 WL 31010830, at *5 (N.D. Ill. Sept. 9, 2002) (dismissing defendant CEO from the case and explaining that there is no basis for holding him personally liable under a promissory estoppel theory since he was acting as an agent for the defendant corporations). Defendant Lombardi also argues that Plaintiff's promissory estoppel claim in Count III must be dismissed because Plaintiff alleges that there is a valid contract, and under Illinois law, promissory estoppel is "not intended to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails

to prove breach of contract." *Stewart v. Nw. Mut. Life Ins. Co.*, 180 F. Supp. 3d 566, 575 (N.D. Ill. 2016) (citation and internal quotation marks omitted).

Plaintiff fails to respond to these arguments in its response brief. [See 35.] Since Defendant Lombardi has presented "plausible reasons for dismissing" this claim against him, and Plaintiff has waived any response, Count III against Defendant Lombardi is dismissed. See *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1042 (7th Cir. 1999) ("If [judges] are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning."); see also *County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006) ("When presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action." (internal quotations omitted)); *Cincinnati Insurance Co. v. Eastern Atlantic Insurance Co.*, 260 F.3d 742, 747 (7th Cir. 2001) (plaintiff's failure to mention defendant's argument regarding scope of insurance policy exclusion treated as "acquiescence" to defendant's interpretation, rendering unnecessary any substantive determination by the court).

### 3. Count IV: Illinois Consumer Fraud and Deceptive Business Practices Act

Count IV alleges a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("the Act") against Defendants Lombardi and DRM. The Act prohibits the "employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact * * * in the conduct of any trade or commerce * * *." 815 ILCS 505/2; see also *Labella Winnetka, Inc. v. Gen. Cas. Ins. Co.*, 259 F.R.D. 143, 149 (N.D. Ill. 2009). The fundamental concern of the Act is consumer protection, and violations of the Act are *actionable* only where consumer protection

concerns are implicated. *Labella Winnetka, Inc.*, 259 F.R.D. at 149 (emphasis in original). In this case, Defendant Lombardi argues that Count IV should be dismissed because Plaintiff does not allege that Defendant Lombardi's conduct implicates consumer protection concerns or involved trade practices addressed to the market generally.

As with Count III, Plaintiff patently fails to respond to this plausible argument for dismissal in its response brief, [see 35], and thus Count IV against Defendant Lombardi is dismissed. See *Kirksey*, 168 F.3d at 1042; *County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006); *Cincinnati Insurance Co. v. Eastern Atlantic Insurance Co.*, 260 F.3d 742, 747 (7th Cir. 2001).

### B.      DRM's Motion to Dismiss

### 1.      Count I: Breach of Settlement Agreement

In Count I, Plaintiff alleges that on April 7, 2014, Plaintiff and Defendant DRM entered into a Settlement Agreement. Plaintiff contends that the April 7, 2014 email constituted an offer by Defendant DRM, which was accepted by Plaintiff. Plaintiff further contends that consideration was given by Plaintiff to reduce its normal rent charges in exchange for prompt payment and to allow the inventory to temporarily remain in the warehouse, and consideration was given by Defendant DRM in the form of a promise to pay and a promise to remove the product from Plaintiff's warehouse at DRM's expense. [6, at ¶ 56.] Plaintiff argues that Defendant DRM breached its obligations under the Settlement Agreement by failing to pay the agreed upon storage fees to Plaintiff and by failing to remove the large amount of inventory that remains in Plaintiff's warehouse.[3]

---

[3] It is unclear from the First Amended Complaint whether there was a written agreement laying out the terms of the original storage agreement or if this was an oral agreement. [See 6, at ¶ 22.] It is also unclear why Plaintiff does not allege a breach of contract claim based on the original storage agreement, to the extent there was an original agreement.

Defendant DRM argues that Count I should be dismissed because Plaintiff did not accept Defendant DRM's settlement offer in the April 7, 2014 email, and thus no contract was formed. [38, at 7.] Defendant DRM argues that Plaintiff did not accept the 20% discount in DRM's offer, and thus there was no meeting of the minds. Defendant DRM bases this argument on the May 5, 2014 email exchange between the parties:

> DEFENDANT DRM: Several weeks ago I sent you an offer to get this situation cleared up. I have not heard from you. Wondering what your thoughts are.
>
> PLAINTIFF: I did respond. I cannot find [sic] at the moment but basically I accepted the offer but wanted clarification on the 20% discount. I did not understand which invoices it effected [sic]. I was wondering why we did not receive payment last week.
>
> DEFENDANT: No problem. Thank you.

[*Id.*, at Exhibit F.]

Plaintiff argues that the May 5, 2014 email exchange shows that Plaintiff accepted Defendant DRM's offer, and only after accepting the offer, simply inquired as to a clarification of the terms of the agreement. Plaintiff further argues that nothing in the email suggests that its acceptance was conditional on how the 20% discount would be applied. In Plaintiff's view, the email exchange at most presents a question of fact about whether or not Plaintiff accepted Defendant DRM's offer. [42, at 9–10.]

The parties also raise arguments based on their communications surrounding the offer and alleged acceptance. Defendant DRM argues that Plaintiff's assertion in September 2014 that the total amount due at that time was "$162,698.13" omits the 20% discount, which, in Defendant DRM's view, reinforces the argument that Plaintiff never accepted that term of the contract. Plaintiff, for its part, argues that its statement that it was "wondering why we did not receive payment" last week shows that it was operating under the impression that the terms of

the Settlement Agreement had been accepted. Additionally, Plaintiff contends that Defendant DRM acknowledged the validity of the Settlement Agreement when Defendant Lombardi emailed Plaintiff on May 5, 2014, stating "let me send a 'catch-up check' this week," thus admitting that Defendant DRM had not sent the payments that were agreed to in the Settlement Agreement. [See *id.* at ¶ 57.]

The Court concludes that Plaintiff has adequately pled acceptance to survive Defendant DRM's motion to dismiss the breach of contract claim. See *Concentra Health Servs., Inc.*, 496 F.3d at 776 ("the factual allegations in the complaint must be sufficient to raise the possibility of relief above the 'speculative level'" (quoting *Twombly*, 550 U.S. at 555)). "[A]nalysis of offer and acceptance typically involves complicated factual issues of intent—issues not appropriately addressed on a motion to dismiss * * *." *Magellan Int'l Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 924 (N.D. Ill. 1999). Here, accepting as true Plaintiff's factual allegations and construing them in the light most favorable to Plaintiff, as the Court must at this juncture, Plaintiff has alleged facts from which it is at least plausible that it accepted Defendant DRM's offer and a valid Settlement Agreement was formed. See *Tibor Mach. Prod., Inc. v. Freudenberg-NOK Gen. P'ship*, 967 F. Supp. 1006, 1016 (N.D. Ill. 1997) (denying motion to dismiss breach of contract claim and explaining that although there were discrepancies between the alleged offer and alleged acceptance, "these discrepancies are insufficient to justify dismissal at this juncture"). Plaintiff alleges that it "accepted the terms of [DRM's] offer," [6, at ¶ 40], and in the May 5, 2014 email exchange, Plaintiff states that it already accepted the offer in a separate correspondence, [*id.,* at Exhibit 4]. There is nothing in the May 5, 2014 email exchange indicating that Plaintiff's acceptance was conditional on the 20% discount applying only to certain invoices, and nothing in the May 5, 2014 email exchange explicitly negates Plaintiff's

allegation that it accepted the offer. Rather, the May 5, 2014 email exchange leads to the inference that in Plaintiff's previous correspondence, Plaintiff accepted the offer and was merely seeking clarification on the terms of the Settlement Agreement. Further, the factual record at this stage of the litigation does not contain the correspondence that Plaintiff refers to in the May 5, 2014 email exchange, in which Plaintiff allegedly accepted the offer, and Plaintiff was not required to proffer evidence at the pleading stage. See *Tibor Mach. Prod., Inc.*, 967 F. Supp. at 1018 (explaining that the court would not reject plaintiff's claim "out-of-hand before the factual record ha[d] been developed" (emphasis in original)).

Thus, given that "the presumption is clearly against dismissal at the pleading stage," *Tibor Mach. Prod., Inc.*, 967 F. Supp. at 1018, the Court respectfully declines to dismiss Plaintiff's breach of contract claim for lack of valid acceptance. See *Shair v. Qatar Islamic Bank*, 2009 WL 691249, at *4 (N.D. Ill. Mar. 16, 2009) (rejecting defendant's argument that the exhibits submitted in support of plaintiff's allegation that he accepted the offer do not constitute acceptance, and explaining that "[t]his is a factual issue not suitable to adjudication on a motion to dismiss and that plaintiff's allegation that he immediately accepted the offer is sufficient); *Magellan Int'l Corp.*, 76 F. Supp. 2d at 924 (explaining that at the motion to dismiss stage, "[i]t is enough that [plaintiff] has alleged facts that a factfinder could call an offer on the one hand and an acceptance on the other").

### 2. Count III: Promissory Estoppel

As discussed above, Plaintiff brings a promissory estoppel claim against Defendants Lombardi and DRM in Count III. Plaintiff alleges that Defendant DRM, through its agent Lombardi, promised to pay the agreed upon amount due to Plaintiff and to remove the inventory from the warehouse; Plaintiff relied on such promise and postponed legal action against

Defendants and continued to store the inventory; and due to this reliance, Plaintiff lost the revenue it could have generated by leasing the space to a paying customer. [6, at ¶¶ 73–87.]

Under Illinois law, the elements of promissory estoppel are: (1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable to defendant, and (4) plaintiff relied on the promise to its detriment. *David v. Bayview Loan Servicing, LLC,* 2016 WL 1719805, at *5 (N.D. Ill. Apr. 29, 2016) (quoting *Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 676 (7th Cir. 2005)) (internal quotation marks omitted). "Under Illinois law, a claim for promissory estoppel will only succeed where all the other elements of a contract exist, but consideration is lacking." *Id.* (citation and internal quotation marks omitted).

Defendant DRM argues that Plaintiff's promissory estoppel claim in Count III must be dismissed because Plaintiff has not adequately alleged that it accepted Defendant DRM's settlement offer and because there was no meeting of the minds. However, the Court already has rejected this argument in the above discussion of Plaintiff's breach of contract claim. Defendant DRM also argues that Plaintiff fails to allege that it "acted in a definite and substantial character in reliance on the alleged promise" and that the First Amended Complaint does not suggest that "absent the alleged promises," Plaintiff "would have behaved any differently." *Jackson v. Bank of N.Y.*, 62 F. Supp. 3d 802, 819–20 (N.D. Ill. 2014). However, as discussed above, Plaintiff adequately alleges that because of Defendant DRM's promises to pay the amounts due and to remove the inventory at its expense by the end of June 2014, Plaintiff continued to store Defendant DRM's inventory and refrained from removing the inventory and leasing the warehouse space to a paying customer, which allegedly injured Plaintiff. See *Jackson*, 62 F. Supp. 3d at 820 ("Detrimental reliance may consist of either an affirmative action or a

forbearance based on the promise."). Thus, the Court denies Defendant DRM's motion to dismiss Count III.

### 3. Count IV: Illinois Consumer Fraud and Deceptive Business Practices Act

Defendant DRM argues that Count IV should be dismissed for the same reasons raised by Defendant Lombardi in his separate motion to dismiss. Plaintiff does not respond to Defendant DRM's arguments in his response brief, [see 42, at 14], and rather rests on the allegations in his First Amended Complaint. Since Plaintiff has waived any argument in response to Defendant DRM's plausible arguments for dismissing Count IV, the Court dismisses Count IV against Defendant DRM. See *Kirksey*, 168 F.3d at 1042 ("If [judges] are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning."); see also *County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006) ("When presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action." (internal quotations omitted)); *Cincinnati Insurance Co. v. Eastern Atlantic Insurance Co.*, 260 F.3d 742, 747 (7th Cir. 2001) (plaintiff's failure to mention defendant's argument regarding scope of insurance policy exclusion treated as "acquiescence" to defendant's interpretation, rendering unnecessary any substantive determination by the court).

### 4. Count V: Quantum Meruit

In Count V, Plaintiff brings a quantum meruit claim against Defendant DRM. "Quantum meruit is a subset of unjust enrichment that adheres when the plaintiff alleges performance of valuable services without compensation." *Fararo v. Sink LLC*, 2004 WL 635062, at *3 (N.D. Ill. Mar. 30, 2004); see also *Prod. Process Consultants, Inc. v. Wm. R. Hubbell Steel Corp.*, 988 F.2d 794, 796 (7th Cir. 1993). To state a claim for quantum meruit, the plaintiff must plead that

(1) he performed a service to the benefit of the defendant; (2) he did not perform this service gratuitously; (3) the defendant accepted this service; and (4) no contract existed to prescribe the payment for this service. *Langone v. Miller*, 631 F. Supp. 2d 1067, 1071 (N.D. Ill. 2009). "Quantum meruit is a quasi-contract doctrine that allows the Court to imply the existence of a contract in order to prevent injustice." *Id.* (citing *Hayes Mech., Inc. v. First Indus.*, 812 N.E.2d 419, 426 (Ill. App. Ct. 2004)).

In the case at hand, Plaintiff alleges that it performed storage services for Defendant DRM "with the implied promise that DRM would pay for such storage services." [6, at ¶ 105.] Plaintiff further alleges that Defendant DRM benefited from the services performed by Plaintiff because the inventory that is being stored serves as collateral for secured loans to DRM by at least two lenders. [*Id.* at ¶ 107.]

Defendant DRM argues that Count V must be dismissed because Plaintiff fails to allege the absence of a contract between Plaintiff and Defendant DRM governing Plaintiff's provision of storage services to Defendant DRM. Defendant DRM points out that Count V incorporates the allegations of paragraph 22 of the First Amended Complaint, which alleges that "Beginning in March of 2013[,] Defendant [DRM] agreed to pay [Plaintiff] a storage fee of approximately $2,512.25 per week to store the DRM Inventory until they were able to find an alternative storage facility." [*Id.* at ¶ 22.] In response, Plaintiff argues that its quantum meruit count is pled in the alternative to its breach of contract claim in Count I. Plaintiff further argues that it does not allege that the March 2013 communications discussed in paragraph 22 of the First Amended Complaint created a contract between the parties.

The Court concludes that Plaintiff's quantum meruit claim must be dismissed because Plaintiff fails to allege the absence of a contract; rather, as Defendant DRM points out, Plaintiff

incorporates into Count V its allegation in paragraph 22 of the First Amended Complaint that a contract was formed between Plaintiff and Defendant DRM governing Plaintiff's provision of storage services to Defendant DRM ("the Original Storage Contract"). "Illinois law does not permit a party to recover on a theory of quasi-contract when an actual contract governs the parties' relations on that issue." *Keck Garrett & Assocs., Inc. v. Nextel Commc'ns, Inc.*, 517 F.3d 476, 487 (7th Cir. 2008). There are two related reasons for this rule. First, quantum meruit, like the theory of unjust enrichment, is an equitable remedy based on a contract implied in law. See *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013); *Langone*, 631 F. Supp. 2d at 1071). "If an express contract exists to govern the parties' conduct, then there is no room for an implied contract." *Cohen*, 735 F.3d at 615. Second, the equitable remedies of quantum meruit and unjust enrichment are only available when there is no adequate remedy at law. See *id.* (noting that the first reason "may be regarded as a specific application of the second reason—no implied contract can exist where an express one governs because no equitable remedy can lie where a legal one is available").

Of course, a plaintiff may plead a breach of contract claim and also plead a quantum meruit claim in the alternative.[4] See *Cohen*, 735 F.3d at 615; *Wabash Castings, Inc. v. Fuji Mach. Am. Corp.*, 2016 WL 4765717, at *2 (N.D. Ill. Sept. 13, 2016) ("[U]nder the federal procedural rules, [plaintiff] may allege promissory estoppel and unjust enrichment/quantum

---

[4] "[U]nder the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural rules." *Wabash Castings, Inc. v. Fuji Mach. Am. Corp.*, 2016 WL 4765717, at *2 (N.D. Ill. Sept. 13, 2016). "Under Federal Rule of Civil Procedure 8(d)(2), a 'party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.'" *Id.* Further, under Rule 8(d)(3), a "party may state as many separate claims or defenses as it has, regardless of consistency." *Id.* (quoting Fed. R. Civ. P. 8(d)(3)). As the Supreme Court has explained, the "[r]ules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties" to plead inconsistent claims in the alternative. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805 (1999); see also *Wabash Castings, Inc.*, 2016 WL 4765717, at *2.

meruit claims in the alternative to its breach of contract claims even though it cannot recover under both breach of contract and quasi-contract theories."). However, "the inconsistent-pleading option in this context is limited." *Cohen*, 735 F.3d at 615. A plaintiff may plead alternative claims as follows: "(1) there is an express contract, and the defendant is liable for breach of it; and (2) if there is *not* an express contract, then the defendant is liable for unjustly enriching himself at my expense." *Id.* (emphasis in original).

That is not what Plaintiff is alleging in this case. Plaintiff alleges the existence of two contracts: (1) the Original Storage Contract under which Defendant DRM agreed to pay Plaintiff a storage fee of approximately $2,512.25 per week[5] [see 6, at ¶ 22], and (2) the Settlement Agreement under which Defendant DRM agreed to pay Plaintiff a discounted amount and to remove the inventory by the end of June, with Defendant DRM responsible for all moving charges [see *id.*, at ¶ 40].[6] Under Illinois law, an earlier contract is superseded by a later contract when both contracts deal with the same subject matter, the two contracts contain some inconsistencies which evince the conclusion that the two parties intended for the second contract to control their agreement and to supersede the first contract, and the later contract reveals no intention by the parties to incorporate any of the terms of the first contract. *Glass v. Allied Waste Transportation, Inc.*, 2016 WL 6568071, at *2 (N.D. Ill. Nov. 3, 2016) (citation and internal quotation marks omitted).

In short, Plaintiff's allegations lead to the following alternatives: (1) the Settlement Agreement is a valid contract, superseding the Original Storage Contract, and Plaintiff can thus bring a breach of contract claim for breach of the Settlement Agreement; (2) alternatively, if the

---

[5] It is unclear from the First Amended Complaint whether there was a written agreement or if this was an oral agreement.

[6] It is unclear from the First Amended Complaint why Plaintiff does not allege a breach of contract claim based on the Original Storage Contract.

Settlement Agreement is *not* a valid contract, then the Original Storage Contract governs the relationship between Plaintiff and Defendant DRM, so Plaintiff can bring a breach of contract claim for breach of the Original Storage Contract. See *Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, 2008 WL 925277, at *1 (S.D. Ohio Apr. 2, 2008) (permitting plaintiff to file amended complaint asserting a claim for breach of a settlement agreement and, in the alternative, a claim for breach of the original contract). Plaintiff may also have a third alternative pleading: if the Settlement Agreement is not a valid contract, and the Original Storage Contract also is not a valid contract, then Plaintiff may be able to plead an alternative quantum meruit claim. However, Plaintiff may only bring this third alternative pleading if it does not allege the existence of a contract (as it does in paragraph 22 of the First Amended Complaint) in its quantum meruit claim. See *Cohen*, 735 F.3d at 615 (Although a plaintiff "may plead breach of contract in one count and [an alternative equitable quasi-contract claim in another count], it may not include allegations of an express contract which governs the relationship of the parties, in the counts for unjust enrichment" (citation and internal quotation marks omitted)); *Greene v. Sears Protection Co.*, 2016 WL 397375, at *2 (N.D. Ill. Feb. 2, 2016) (holding that plaintiffs could not plead unjust enrichment as an alternative to their breach of contract claim where plaintiffs alleged by incorporation in their unjust enrichment count that they entered into a contact with defendants).

Finally, the Court will briefly address Plaintiff's argument that it does not allege that the March 2013 communications discussed in paragraph 22 of the First Amended Complaint created an express contract between the parties.[7] This argument misses the mark. "[W]hat controls in determining the viability of a claim is the complaint's factual allegations and not the legal label

---

[7] In paragraph 22 of the First Amended Complaint, Plaintiff alleges: "Beginning in March of 2013 Defendant [DRM] agreed to pay [Plaintiff] a storage fee of approximately $2,512.25 per week to store the DRM Inventory until they were able to find an alternative storage facility." [6, at ¶ 22.]

that has been invoked by the pleader." *Sumpter v. Mack Chicago Corp.*, 918 F. Supp. 256, 260 (N.D. Ill. 1996). Thus, it is of no import that Plaintiff does not use the legal label of "contract" in paragraph 22, since Plaintiff's factual allegations contain the essential elements of a contract: offer, acceptance, and consideration.

For these reasons, Plaintiff's quantum meruit claim in Count V is dismissed.

### C.     Motion for Leave to File Second Amended Complaint

In its response to Defendant Lombardi's motion to dismiss, Plaintiff seeks leave to file a second amended complaint. [35, at 7.] Defendant Lombardi argues that Plaintiff should not be granted leave to amend its complaint yet again because nothing in the record suggests that Plaintiff can remedy the flaws in its pleadings.

The Federal Rules of Civil Procedure provide that leave to amend a complaint should be "freely give[n] * * * when justice so requires." Fed. R. Civ. P. 15(a). Nevertheless, courts may deny leave to amend if there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962) (emphasis omitted)).

The Court concludes that Plaintiff shall be given one final opportunity to amend its complaint, if it believes in good faith that it can cure the deficiencies identified above.

## IV.     Conclusion

For the foregoing reasons, Lombardi's motion to dismiss [29] is granted in part and denied in part, and DRM's motion to dismiss [37] is granted in part and denied in part: Plaintiff's breach of contract claim against Defendant DRM for breach of the Settlement Agreement (Count

I) can proceed; the common law fraud claim against Defendant Lombardi (Count II) can proceed; the promissory estoppel claim (Count III) can proceed against Defendant DRM and is dismissed as to Defendant Lombardi; the Illinois Consumer Fraud and Deceptive Business Practices Act claim (Count IV) is dismissed as to both Defendants; and the quantum meruit claim against Defendant DRM (Count V) is dismissed.  Plaintiff is given until August 18, 2017 to file a second amended complaint consistent with this opinion, if it believes that it can overcome the deficiencies identified above.  This case is set for further status hearing on August 23, 2017 at 9:00 a.m.

Date: July 18, 2017

Robert M. Dow, Jr.
United States District Judge